[No. C062413. Third Dist. July 19, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JACKIE DELBERT TAYLOR, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

## COUNSEL

Rita Barker, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, Acting P. J.**—Penal Code section 1202.4, subdivision (f)(3)(H) authorizes restitution for "[a]ctual and reasonable attorney's fees" incurred by the victim as a result of the defendant's criminal conduct. This appeal addresses whether a court may order restitution for a contingency fee paid by the victim without first determining whether the fee was reasonable under the lodestar method for calculating attorney fees. In the published part of this opinion, we disagree with the decision of Division One of the Fourth District Court of Appeal in *People v. Millard* (2009) 175 Cal.App.4th 7 [95 Cal.Rptr.3d 751] (*Millard*), and conclude a trial court can award victim restitution for contingency fees without a lodestar analysis. In the unpublished portion, we conclude defendant was entitled to additional presentence conduct and custody credits.

## BACKGROUND

On July 29, 2007, defendant Jackie Delbert Taylor crossed a double yellow line while trying to pass another vehicle, had a head-on collision, and fled the scene before emergency personnel arrived. Defendant's victim, Kevin Bailey, sustained significant injuries to his arm and his car was totaled.

Defendant pled no contest to hit and run causing injury (Veh. Code, § 20001, subd. (a)), admitted a "strike" (Pen. Code, §§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)),[1] and entered a no contest plea in an unrelated case.

The trial court sentenced defendant to six years in prison, suspended proceedings pursuant to section 3051 of the Welfare and Institutions Code, and committed defendant to the California Rehabilitation Center (CRC). The trial court subsequently determined defendant's strike rendered him ineligible

---

[1] Further undesignated statutory references are to the Penal Code.

for CRC commitment, and imposed the original sentence. Following testimony from Bailey, the trial court ordered $44,554.83 in victim restitution, including $8,333.33 in attorney fees.

Defendant appeals, challenging the award of victim restitution for attorney fees and the trial court's calculation of presentence credits.

## DISCUSSION

### I

■ Section 28 of the California Constitution was added to article I by voters in the June 1982 Primary Election, and was amended and renumbered in the 2008 General Election. Commonly known as the Victims' Bill of Rights, it gives all crime victims the constitutional right to receive restitution "from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) The Legislature has "enacted various provisions to implement [section 28's] call for mandatory restitution from persons convicted of crimes to their victims. [Citation.]" (*People v. Birkett* (1999) 21 Cal.4th 226, 236 [87 Cal.Rptr.2d 205, 980 P.2d 912].)

Section 1202.4 is one such enactment. Pursuant to subdivision (f), the "court shall require" a defendant to make restitution to the victim for all economic losses incurred by the victim as a result of the defendant's criminal conduct. Applying the constitutional right to restitution, the statute mandates: "The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." (*Ibid.*) The language from section 1202.4, subdivision (f), is taken from the California Constitution's guarantee of victim restitution, California Constitution, article I, former section 28, subdivision (b)(13), which stated: "Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." This was amended by Proposition 9 in 2008, and now reads as follows: "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13).) As amended, the California Constitution now requires trial courts to order victim restitution whenever the victim suffers a loss.

Evidence was presented at the restitution hearing that Bailey incurred $8,333.33 in attorney fees as a result of the hit-and-run accident, a contingency fee of 33 1/3 percent of his settlement from the insurance company. The trial court included compensation for the contingency fee in its restitution order.

Defendant contends the award of restitution for the contingency fee was unreasonable as the trial court should have first determined what would be a reasonable fee under the lodestar method for calculating attorney fees.[2] We disagree.

We review a challenge to the amount of victim restitution for abuse of discretion. (*People v. Baker* (2005) 126 Cal.App.4th 463, 468–469 [23 Cal.Rptr.3d 871].) As this court recently noted, " ' "A victim's restitution right is to be broadly and liberally construed." ' " (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1231 [99 Cal.Rptr.3d 555].) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132 [123 Cal.Rptr.2d 316].) Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886 [135 Cal.Rptr.2d 466].)

Defendant's claim is based on *Millard*, a driving under the influence case with serious injuries, where the victim obtained a $1.1 million settlement from the defendant's insurance company, and paid his attorney a $366,666 contingency fee. (*Millard, supra*, 175 Cal.App.4th at pp. 13, 20–21.) After taking testimony on the contingency fee, the trial court in *Millard* determined the victim's attorney spent between 100 and 200 hours on the case, for an hourly fee of at least $1,833, which it characterized as an " 'unconscionable' " fee for such a " 'slam dunk' " case. (*Id.* at p. 22.) Nonetheless, the trial court ruled it did not have the " 'right or jurisdiction to interfere with the contingent fee arrangement between the victim and his counsel,' " and ordered restitution for the contingent fee, prorated to exclude the portion of the fee attributed to the award for pain and suffering. (*Id.* at pp. 22–23.)

The Court of Appeal in *Millard* found the trial court's award of attorney fees was an abuse of discretion "because it either: (1) awarded attorney fees it found were unconscionable/unreasonable; or (2) even if it implicitly found those fees were reasonable based solely on the contingency fee agreement, it did not apply the correct legal standard in determining the amount of reasonable attorney fees." (*Millard, supra*, 175 Cal.App.4th at p. 31.)

The *Millard* court concluded the trial court erred by not applying the lodestar method for calculating attorney fees. (*Millard, supra*, 175 Cal.App.4th

---

[2] To establish a reasonable fee under the lodestar method, the court multiplies the number of hours reasonably expended by a reasonable hourly rate to compute what is called the lodestar or touchstone. (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1240 [66 Cal.Rptr.3d 680]; *Davis v. City of San Diego* (2003) 106 Cal.App.4th 893, 903 [131 Cal.Rptr.2d 266].)

at p. 32.) It declared: "Unless a statute provides otherwise, it is presumed the Legislature intended that the amount of a statutory award of reasonable attorney fees should be determined by application of the lodestar adjustment method. [Citations.]" (*Ibid.*)

Applying this rule, the Court of Appeal declared: "A court 'may not determine a "reasonable" attorney fee solely by reference to the amount due under a contingency agreement.' [Citation.] Rather, a court must begin with the lodestar calculation and then make adjustments upward or downward based on the factors discussed in *Ketchum*[ *v. Moses* (2001) 24 Cal.4th 1122 [104 Cal.Rptr.2d 377, 17 P.3d 735]], including whether there is a contingency fee arrangement. [Citation.] After considering all relevant factors, a court may ultimately, but is not compelled to, award as reasonable those fees set forth in a contingency fee agreement. [Citations.]" (*Millard, supra,* 175 Cal.App.4th at p. 33, italics omitted.)

We agree with *Millard*'s first holding. A crime victim is entitled to restitution only for "[a]ctual and reasonable attorney's fees . . . ." (§ 1202.4, subd. (f)(3)(H).) The trial court in *Millard* ignored the Legislature's directive and awarded restitution for attorney fees which it had found were " 'unconscionable' " in a " 'slam dunk' " case. This was an abuse of discretion.

However, we decline to follow *Millard*'s alternative holding. *Millard* relied on *Ketchum v. Moses, supra,* 24 Cal.4th 1122 (*Ketchum*), to conclude that the trial court was required to apply the lodestar calculation to the contingency fee. (*Millard, supra,* 175 Cal.App.4th at pp. 32–33.) In *Ketchum,* the Supreme Court held the lodestar method established in the *Serrano*[3] litigation was appropriate for calculating an award of attorney fees following a civil defendant's successful anti-SLAPP (strategic lawsuit against public participation) motion (Code Civ. Proc., § 425.16). (*Ketchum, supra,* 24 Cal.4th at pp. 1127, 1130–1131, 1134–1136.) The Supreme Court noted that Courts of Appeal applied this method to a "broad range of statutes authorizing attorney fees" in civil cases, and cited with approval a Court of Appeal's observation that the " 'Legislature appears to have endorsed the [lodestar adjustment] method of calculating fees, except in certain limited situations.' [Citation.]" (*Id.* at pp. 1134–1135.)

■ The Supreme Court also made clear its holding did not establish a presumption in favor of the lodestar method. "We emphasize, however, that although we are persuaded that the lodestar adjustment approach should be applied to fee awards under Code of Civil Procedure section 425.16, we are

---

[3] *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Serrano v. Unruh* (1982) 32 Cal.3d 621 [186 Cal.Rptr. 754, 652 P.2d 985]. (See *Ketchum, supra,* 24 Cal.4th at pp. 1130–1131.)

not mandating a blanket 'lodestar only' approach; every fee-shifting statute must be construed on its own merits and nothing in *Serrano* jurisprudence suggests otherwise." (*Ketchum, supra,* 24 Cal.4th at p. 1136.) *Millard*'s rote application of the lodestar method ignores this essential point.

The lodestar method is a fee-shifting mechanism applied in contexts such as civil litigation which confers a " 'significant benefit' " to the public (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317–318, 321–322 [193 Cal.Rptr. 900, 667 P.2d 704]), compensation for the enforcement of public rights under a private attorney general theory (*Serrano v. Priest, supra,* 20 Cal.3d at pp. 46–47; Code Civ. Proc., § 1021.5), or to bring about attorney fee shifting to discourage SLAPP suits (*Ketchum, supra,* 24 Cal.4th at pp. 1130–1131). Victim restitution presents different interests. Although "there are objectives—apart from simply providing victim indemnification—that underlie the state's policy of requiring a criminal defendant to pay restitution to his victim," the *"primary* purpose of victim restitution is to fully reimburse the victim for his or her economic losses." (*People v. Jennings* (2005) 128 Cal.App.4th 42, 57 [26 Cal.Rptr.3d 709], original italics.)

The attorney fee awards addressed in *Ketchum, Serrano,* and related cases are intended to encourage litigation which benefits the public or discourage litigation contrary to the public interest. Fee awards in these cases must be finely tuned so that litigation is neither excessively encouraged nor discouraged. Victim restitution for attorney fees is not intended to encourage or discourage litigation; the civil case in which the victim incurs attorney fees is separate from the criminal case where the restitution is awarded. Instead, victim restitution for attorney fees is intended to make the victim whole.

A crime victim who seeks redress for his injuries in a civil suit can expect to pay counsel with a contingency fee. "[I]t is a rare personal injury plaintiff who has the assets to pay for legal representation on an hourly basis plus costs, and also has the willingness to assume the financial risk of not prevailing in the lawsuit. For this reason, almost all plaintiff retainer agreements in personal injury actions are on a contingency fee basis, with the lawyer's fees and costs to be paid from a judgment in favor of the client, and the lawyer receiving nothing if the client loses the lawsuit." (*Gilman v. Dalby* (2009) 176 Cal.App.4th 606, 619 [98 Cal.Rptr.3d 231].)

If counsel is successful, the contingency fee is likely to be higher than an hourly fee for equivalent work. "It has been repeatedly recognized that a contingent fee ' "may properly provide for a larger compensation than would otherwise be reasonable." ' [Citations.]" (*Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287–288 [256 Cal.Rptr. 209].) Counsel paid by a contingency fee bears the risk that the client will not prevail, or that "the amount

recovered will yield a percentage fee which does not provide adequate compensation," and "finances the case for the client during the pendency of the lawsuit." (*Id.* at p. 288.)

The *Millard* decision noted the lodestar calculation took into account the contingent nature of a claim, which could justify " 'a fee enhancement, or so-called multiplier, for contingent risk.' " (*Millard, supra,* 175 Cal.App.4th at p. 32, quoting *Ketchum, supra,* 24 Cal.4th at p. 1132.) As we have already explained, this method is not intended to compensate crime victims for their losses, but is a fee-shifting mechanism in civil litigation beneficial to the public, employed to "bring the financial incentives for attorneys enforcing important constitutional [or other] rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." (*Ketchum, supra,* 24 Cal.4th at p. 1132.)

■ Applying the lodestar to attorney fees incurred by crime victims overlooks the fundamental purpose of the statutory and constitutional right to victim restitution, awarding "full restitution" to the victim absent "compelling and extraordinary reasons for not doing so . . . ." (§ 1202.4, subd. (f).) Since a victim will likely have to pay a contingent fee in any personal injury action resulting from the crime, evidence that the victim incurred the contingent fee is prima facie evidence of a loss entitling him to compensation.

"[A] wrongdoer in criminal cases as in civil torts takes his victim as he finds him." (*People v. Cameron* (1975) 53 Cal.App.3d 786, 790 [126 Cal.Rptr. 44].) If a defendant feels the victim is seeking restitution for unreasonable attorney fees, he may present argument and evidence supporting his position. However, where there is uncontradicted evidence the victim incurred attorney fees as a result of the defendant's actions, it is not an abuse of discretion to award restitution for the fee without resorting to the lodestar method.

■ Defendant did not submit any evidence that the attorney fee paid by the victim was unreasonable, and did not contest restitution for the contingency fee. The contingent fee paid by the victim, 33 1/3 percent of the total award, is the typical amount paid under a contingency fee contract. (*Lucero v. Aladdin Beauty Colleges* (1994) 117 N.M. 269, 272 [871 P.2d 365].) The trial court's award of restitution for the contingency was not an abuse of discretion.

II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*] See footnote, *ante,* page 757.

## DISPOSITION

The judgment is modified to reflect that defendant is entitled to 670 days of conduct credit, consisting of 544 days' local time and 126 days' conduct credit. As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment to reflect this modification and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Hull, J., and Robie, J., concurred.