Filed 12/2/13  In re Jennifer M. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re JENNIFER M., a Person Coming Under the Juvenile Court Law. | H039009 (Santa Clara County Super. Ct. No. J38990) |
| THE PEOPLE, Plaintiff and Respondent, v. JENNIFER M., Defendant and Appellant. | |

The juvenile court declared appellant Jennifer M. a ward under Welfare and Institutions Code section 602 and placed her on probation after she admitted that she had committed grand theft (Pen. Code, §§ 484, 487, subd. (a)),[1] possessed brass knuckles (§ 21810), and committed battery at a school (§§ 242, 243.2, subd. (a)(1)).  At a contested restitution hearing, the only witness was the owner of the stolen property.  The court ordered Jennifer to pay $2,141.34 in restitution for the value of the stolen property, which included $1,800 for the value of stolen gold rings.  On appeal, Jennifer claims that the

---

[1]  Subsequent statutory references are to the Penal Code unless otherwise specified.

court's restitution order is not supported by substantial evidence that the stolen rings were worth $1,800. She also claims that her trial counsel was prejudicially deficient in failing to object on hearsay grounds to testimony she elicited on cross-examination. We disagree with her contentions and uphold the restitution order.

## I.  Background

Marisela S. and her daughter lived in a rented room in the home where Jennifer lived with Jennifer's mother. In November 2011, Jennifer entered Marisela's room and stole three gold rings belonging to Marisela and some other property.[2] An initial victim loss report completed by Marisela's daughter estimated that one of the rings was worth $1,800, another was worth $1,500, and the third ring's value was unknown. Marisela did not have invoices or receipts for the rings. The two rings for which estimates were submitted were a gold band engraved with Marisela's name and an "engagement ring."

Jennifer admitted committing the grand theft and the other counts. The court declared Jennifer a ward and placed her on probation with numerous conditions including that she make restitution. The court also set the matter for a contested restitution hearing. Marisela sought restitution of $2,327.39. The probation officer recommended that the court order restitution of $2,141.34.

Marisela was the only witness at the restitution hearing. She testified on direct examination that she had owned the three rings for "at least 15 years." One ring was Marisela's mother's engagement ring. The engraved ring was a 14-karat gold ring with a wide band. The third ring was a ruby ring given to Marisela as an engagement ring by her fiancé. Marisela testified that "the value of [the engraved] ring is over $1,000," and the value of her mother's engagement ring was $800. Marisela testified that she "really

---

[2] Because the only issue on appeal concerns the rings, we will limit our discussion to the rings and not discuss the other property, which included a cell phone and cash.

2

cannot give an estimate on" the value of the ruby ring though she knew that the ruby was genuine.

On cross-examination, Jennifer's trial counsel asked Marisela "[h]ow" she had come up with "the value" of the engraved ring and her mother's engagement ring. Marisela testified that the stone in her mother's engagement ring was a diamond. Asked if she was "estimating this $800 yourself," Marisela testified that she "went to consult about how much would that ring be valued, according to the weight and everything. That's what they told me of the estimate." Jennifer's trial counsel asked Marisela "[w]here did you go?" Marisela explained, in response to a series of additional questions, that she had consulted with a "young man" named "Roberto" whose "business" was selling gold jewelry. She did not know his last name or have a phone number for him, but her friends bought jewelry from him. Jennifer's trial counsel asked if she knew "the extent of his experience with jewelry appraisal?" Marisela responded: "No. All I know is that they told me that he had been selling gold articles for quite a while." Jennifer's trial counsel asked Marisela if her valuation of her mother's engagement ring was "based on anything other than what Roberto told you?" Marisela responded: "I'm basing that estimate on whatever he told me only." Her estimate of the value of the engraved ring was also based on "what [Roberto] told me," but she had considered too that her sister "had the ring made" for Marisela in Mexico for $600. Jennifer's trial counsel also elicited Marisela's testimony that Roberto "had like a scale to weigh things," and Roberto's business including buying gold. Marisela testified that Roberto's valuation "was based on whatever the cost of gold was at the time." Jennifer's trial counsel did not move to strike any of this testimony as hearsay.

On redirect, Marisela testified that Roberto had made his valuation by examining "another ring that he had that was about the same size as mine."

On further cross-examination, Marisela testified that she had shown the three rings to Roberto before they were stolen and "told him that maybe I wanted to buy some other

3

ones." Two weeks after the rings were stolen, she obtained a valuation of the stolen rings from Roberto.

After the close of evidence, Jennifer's trial counsel argued to the court that "we don't have competent evidence on which to base the value of the rings." "[A]ll we have are estimates from somebody named Roberto whose qualifications are completely unknown to the Court." "I don't believe that this hearsay testimony about somebody named Roberto is competent evidence before the Court to say that the value of the one ring was [$]800 and the other one was a thousand. [¶] I think to take that hearsay testimony by a hearsay declarant who is completely untested, and for all we know completely untrustworthy, we have no reason to think he's trustworthy." "I just don't see how that provides information for the Court to make a determination . . . ." The prosecutor responded by pointing out that Jennifer's trial counsel "didn't object when the witness was talking about that. I think potentially there could have been an objection to Roberto's evaluation."

The court took the matter under submission and later issued an extensive written decision finding that Marisela had incurred a loss of $2,141.34, including $1,800 for the rings. The court noted that Marisela had no receipts for the rings, but it found her reliance on Roberto's valuation to be reasonable because Roberto's business was buying and selling gold jewelry and he had seen the rings before they were stolen. "Jennifer did not submit any evidence of her own or call any witness to testify on her behalf. While her attorney argued in closing that Ms. S.'s testimony was unreliable and inadmissible hearsay because her testimony was based upon Roberto's assertions to Ms. S., [her attorney] did not make any hearsay objection during Ms. S.'s testimony." "[A]fter evaluating Ms. S.'s demeanor and the consistency of her testimony, the court finds Ms. S. to be credible. Moreover, if Ms. S. was fabricating or exaggerating the value of her jewelry, it would seem that she would have concocted a value for the third ring [(the ruby ring)] that was taken from her; but she did not. While the witness could not testify about

4

Roberto's qualifications in evaluating jewelry, the court is satisfied that he knows what a willing buyer and seller would pay and accept for jewelry that he sells. Moreover, Roberto had previously seen Ms. S.'s jewelry so the court is convinced that he had a foundation for his opinion as to what it would cost to replace the jewelry. Given the relaxed nature of a restitution hearing as related to admissible evidence of replacement value, that there was no objection during the testimony to any hearsay evidence, and recognizing that the price of gold and gems fluctuate, as did the court in *Hartley*,[3] the court finds that Ms. S. met her burden of establishing a prima facie case that her economic losses attributed to the jewelry taken from her was $1,800. As Jennifer failed to show that Ms. S.'s evidence was fabricated or exaggerated, and offered no evidence of her own to establish that the replacement value was other than what Ms. S. presented, Jennifer failed to disprove the amount of losses claimed by the victim for the jewelry taken." Jennifer timely filed a notice of appeal from the court's restitution order.

## II. Discussion

### A. Substantial Evidence

Restitution orders are reviewed under an abuse of discretion standard, and the juvenile court's factual findings are reviewed for substantial evidence. (*In re K.F.* (2009) 173 Cal.App.4th 655, 661-662.) "[T]he court may use any rational method of fixing the amount of restitution, provided it is reasonably calculated to make the victim whole, and provided it is consistent with the purpose of rehabilitation. In doing so ' " ' [s]entencing

---

[3] *People v. Hartley* (1984) 163 Cal.App.3d 126 (*Hartley*) was a case in which the trial court had failed to hold a restitution hearing to determine the value of three stolen gold rings. The Court of Appeal reversed and remanded the matter for a hearing. It noted that the rings "contain[ed] gems in various sizes" and that there were "well-known fluctuations to which the markets in gold and gems are subject." (*Hartley*, at p. 130.) Here, of course, a hearing was held.

5

judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' . . ." . . . [¶] This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution.'" (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391-1392, fn. omitted.) While hearsay evidence is admissible at a restitution hearing (*In re Vincent G.* (2008) 162 Cal.App.4th 238, 244), due process does not permit the court to utilize "unreliable information." (*People v. Goulart* (1990) 224 Cal.App.3d 71, 83.) A property owner's valuation of her property is prima facie evidence of its value for restitution purposes (*People v. Foster* (1993) 14 Cal.App.4th 939, 946, superseded by statute on another point as recognized in *People v. Birkett* (1999) 21 Cal.4th 226, 238-242), and it causes the burden to shift to the defense to disprove that valuation (*People v. Taylor* (2011) 197 Cal.App.4th 757, 761).

Marisela, the owner of the three rings, testified on direct examination that her rings were worth $1,800. This testimony, which did not mention Roberto's valuation, was prima facie evidence of the value of the rings, and it therefore caused the burden to shift to Jennifer to prove that the rings were not worth $1,800. Her trial counsel's cross-examination did not succeed in disproving Marisela's valuation. While cross-examination revealed that Marisela had based her valuation substantially on Roberto's estimation of the value of the rings, Jennifer's trial counsel was unable to demonstrate that Roberto's estimates were unreliable. Roberto was in the business of buying and selling gold jewelry, and he used a scale and the current price of gold in his business. These facts gave him professional qualifications. He had seen Marisela's gold rings before they were stolen, which gave him a factual basis for estimating their value. Jennifer's trial counsel made no attempt to suggest that Roberto had any reason to overestimate the value of the rings, nor did she establish any basis for doubting Marisela's testimony about her consultation with Roberto. We see no abuse of discretion

6

in the juvenile court's determination that Roberto's estimate of the value of Marisela's rings was reliable. Substantial evidence supports the court's restitution order.

## B. Ineffective Assistance

Jennifer also contends that her trial counsel was prejudicially deficient in failing to object to Marisela's testimony about Roberto's estimate.

Whenever trial counsel's conduct can be reasonably attributed to sound strategy, a reviewing court will presume that the conduct was the result of a competent tactical decision, and the appellant must overcome that presumption to establish ineffective assistance. (*Strickland v. Washington* (1984) 466 U.S. 668, 689.) Jennifer cannot overcome that presumption. Her trial counsel made a plainly deliberate choice to elicit the information about Roberto on cross-examination in an attempt to attack the reliability of the testimony that Marisela had given on direct examination. While this attempt ultimately failed, it was a competent tactical decision. Had Jennifer's trial counsel not cross-examined Marisela about the basis for her valuation of the rings, Marisela's testimony about their value would have gone unrebutted. Since the defense had the burden of disproving Marisela's valuation, Jennifer's trial counsel had little choice but to attack the basis for Marisela's valuation. She was not deficient in doing so.

## III. Disposition

The juvenile court's restitution order is affirmed.

_____

Mihara, J.

WE CONCUR:

_____

Premo, Acting P. J.

_____

Grover, J.