Filed 12/21/15  P. v. Earl CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>BRIAN CRAIG EARL,<br><br>      Defendant and Appellant. | C076200<br><br>(Super. Ct. No. 10F07955) |

Defendant Brian Craig Earl pleaded no contest to assault by means of force likely to cause great bodily injury (Pen. Code, former § 245, subd. (a)(1))[1] and driving under

---

[1]      Undesignated statutory references are to the Penal Code.

When defendant was charged and when he entered his no contest plea, assault by means of force likely to produce great bodily injury was one of two listed alternatives in former section 245, subdivision (a)(1).  (Stats. 2004, ch. 494, § 1, pp. 4040-4041.)  Subsequently, the Legislature amended section 245, such that assault by means of force

1

the influence of alcohol, while having a blood-alcohol content of 0.08 percent or higher (Veh. Code, § 23152, subd. (b)). The parties stipulated to a factual basis for the plea: on December 5, 2011, defendant "was drinking . . . at a bar. He left that bar. The bartender believed him to be intoxicated, tried to stop him, and [defendant] hit the bartender, Mark Jennings, with [his] truck on his way out of the parking lot. [¶] And while he was driving the vehicle he [had a blood alcohol content of .16]."

The trial court suspended imposition of sentence and granted defendant five years formal probation for the assault, with 180 days to be served in county jail, and informal probation for three years for driving under the influence, to run concurrently with the formal probation.

Defendant was subsequently ordered to pay victim restitution in the amount of $3,058. He appeals the victim restitution order, contending the amount of lost earnings is arbitrary and is not supported by substantial evidence. We agree. Based on the trial court's determination and the record, we can calculate the correct amount of lost earnings for victim restitution. Accordingly, we modify the trial court's order fixing restitution.

FACTUAL AND PROCEDURAL BACKGROUND

Based on the recommendation of the probation department, the People moved the trial court to order defendant to pay $3,216 in restitution to Jennings, which is the amount Jennings submitted he had lost in wages and tips following the assault. Defendant contested the amount, and the trial court held an evidentiary hearing on the matter.

---

likely to produce great bodily injury is now codified in section 245, subdivision (a)(4). (Stats. 2011, ch. 183, § 1; *People v. Brown* (2012) 210 Cal.App.4th 1, 5, fn. 1.)

2

At the evidentiary hearing, the officer who responded to the scene of the incident testified Jennings had refused medical attention and had no visible injuries. Jennings too testified he did not seek any medical attention relative to the incident. Rather, he sought restitution because he had been unable to work from December 5, 2010 to January 3, 2011, because he was suspended "for political reasons" because his employer "wanted to wait and see what happened with the case," and "they wanted to look into the matter."

Jennings claimed he missed out on four weeks of pay because of the suspension. If he had been able to work, he would have earned roughly between $4,500 and $6,000 based on his pay rate of $8 per hour, working 37 hours a week, for four weeks, plus tips of approximately $700 per week. The trial court noted Jennings's estimated loss submitted to the probation department (not included in the record before us) was $6,116, which was based on an average of $804 per week in tips. The People suggested the court award restitution in the amount of $3,984 ($700 in tips for four weeks plus four weeks of 37-hour weeks at a rate of $8 per hour). Defendant argued Jennings was not legally entitled to restitution because his losses were not directly caused by defendant's conduct, but by the employer's decision to suspend Jennings.

Following the evidentiary hearing, defendant submitted a written opposition to the request for restitution. Defendant argued Jennings was not entitled to restitution because his lost wages were not proximately caused by defendant's criminal acts but were the result of an employer-imposed suspension precipitated by Jennings's own actions and these actions were not foreseeable. In response, the People argued Jennings would not have lost wages but for defendant's actions because Jennings's suspension was imposed for an internal investigation to be completed into his actions on the night of defendant's crimes, in accordance with employer policy.

Following briefing, the People asked to reopen evidence regarding the reasons why Jennings was suspended. At the further hearing, one of the owners of the bar where Jennings worked testified there were several incidents involving Jennings, but the witness did not recall Jennings being suspended following this incident. The witness did recount, however, bar policy was that no employee was to chase a customer outside the restaurant. The other owner of the bar also testified. It was his understanding the suspension was imposed by the other owner "just to make sure there [were] no potential negligence issues" in case the incident resulted in civil litigation against the business. He also testified Jennings had been sent out to stop defendant from leaving, so he encouraged the other owner to just suspend him for a little while to have a chance to review and investigate the incident.

The trial court, in issuing its order fixing restitution, noted Jennings was seeking $6,116 in restitution for lost wages caused by his 30-day suspension as a bartender, but also indicated it was difficult to learn what caused Jennings's suspension. As the trial court indicated, the People argued for application of a "but for" rule of causation, while defendant argued proximate causation should govern the analysis. The trial court discounted the owner's testimony that he could not recall the incident of suspension as "not very convincing" and "highly unlikely" and indicated since it was initially explained to Jennings the suspension was necessary for management to investigate the incident, it was reasonable to conclude the initial suspension was proximately caused by the incident.[2] But the trial court found that did not appear to be the only factor involved because there was also evidence the owner had expressed dissatisfaction with Jennings's work prior to the incident and was considering firing Jennings.

---

[2] Proximate causation was not raised by defendant in the instant appeal, and we express no opinion in that regard.

4

Ultimately, the trial court found though "[h]ow much of the suspension was based on the history of dissatisfaction is not subject to precise measurement. . . . it appears to have played a significant role," and it was unlikely it would have taken the employer 30 days to internally investigate the incident and determine Jennings had not caused defendant's crimes. Therefore, the trial court fixed victim restitution at $3,058, one-half of the claimed loss. The trial court reasoned it was very likely the first 15 days of suspension were related to the incident and the balance of the 30-day suspension was more likely than not caused by the employer's general dissatisfaction with Jennings's job performance.

## DISCUSSION

Defendant contends the trial court abused its discretion in awarding Jennings restitution of $3,058 because that amount is irrational, arbitrary, and not supported by substantial evidence. We conclude there is no evidence to support the trial court's finding Jennings's lost earnings caused by defendant's actions amount to $3,058.

A victim who has suffered an economic loss as a result of a defendant's conduct is entitled to restitution "sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) The party seeking restitution has the burden to provide an adequate factual basis for his or her claim. (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) However, once the victim has presented prima facie evidence of his or her loss, either by testimony or statement, " 'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.)

A challenge to the amount of victim restitution awarded is reviewed for abuse of discretion. (*People v. Taylor* (2011) 197 Cal.App.4th 757, 761.) The trial court's

5

" 'discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole.' " (*People v. Millard, supra,* 175 Cal.App.4th at p. 26.)  However, if " 'the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts' " it cannot stand.  (*People v. Giordano, supra,* 42 Cal.4th at pp. 663-664.)  Thus, though "[t]he trial court is not required to order restitution equal to the exact amount of the loss . . . it must employ a rational method that makes the victim reasonably whole.  The restitution order may not be arbitrary or capricious." (*People v. Garcia* (2011) 194 Cal.App.4th 612, 617.)

Here, the trial court took the maximum amount requested by Jennings (in a worksheet not included in the record before us), $6,116, and determined since it was more likely than not only half Jennings's 30-day suspension was attributable to the investigation of the incident, Jennings was entitled to only one-half the requested amount, $3,058.  However, Jennings's own testimony at the restitution hearing was that he missed four weeks of work due to the suspension, he worked an average of 37 hours a week at a rate of $8 per hour, and he also generally earned approximately $700 per week in tips. These figures do not add up to $6,116.  Indeed, using the trial court's determination that the first half of Jennings's suspension was proximately caused by defendant's criminal conduct, we can calculate Jennings's lost wages and tips for a two-week period.  Based on two weeks of missed work, Jennings's lost earnings amount to $1,400 in tips (2 weeks multiplied by $700 per week) and $592 in base wages (2 weeks multiplied by 37 hours per week at $8 per hour).  Based on this calculation, the victim restitution amount is $1,992.

## DISPOSITION

The judgment (order fixing restitution) is modified to award Mark Jennings $1,992.

/s/
HOCH, J.

We concur:

/s/
NICHOLSON, Acting P. J.

/s/
MURRAY, J.