Filed 1/28/16  P. v. McNeill CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN MICHAEL MCNEILL,<br><br>    Defendant and Appellant. | 2d Crim. No. B259075<br>(Super. Ct. No. F476754)<br>(San Luis Obispo County) |

Kevin Michael McNeill appeals a $34,999.99 restitution judgment entered after he was convicted by plea of felony driving with a .08 percent blood alcohol level or higher causing bodily injury.  (Veh. Code, § 23153, subd. (b).)  The trial court suspended imposition of sentence, granted probation,  and ordered appellant to pay $34,999.99 restitution  for attorney fees paid by the victim in negotiating a $100,000 insurance settlement.  (Pen. Code, § 1202.4, subd. (f)(3)(H).)[1]  Appellant contends that the trial court erred in not apportioning the attorney fees to the victim's economic and noneconomic damages.  We affirm.

*Facts and Procedural History*

On July 12, 2012, appellant drove his Ford F-150 truck across a center divider at 50-55 miles per hour.   Appellant hit Madeleline LaVack (victim) head-on,

---

[1] All further statutory references are to the Penal Code.

destroying the truck and victim's Mini Cooper.  Appellant had a blood alcohol level of .11 percent.

Victim suffered a fractured ankle, a broken right foot, and chronic neck injury, causing her to miss 10 weeks of work and lose $4,580 wages.  Victim's out-of-pocket medical expenses were $505.  Victim hired a personal injury lawyer on a contingency fee basis to recover personal injury damages.  Appellant's insurer settled for $50,000 underinsured motorist bodily injury liability policy limits and the victim's carrier settled for $50,000.  Victim sought $34,999.99 restitution for the contingency fees paid her attorney:  $18,333.33 for settling with appellant's insurer and $16,666.66 for setting with her own insurer.

Appellant argued that the trial court could not order restitution for fees that were incurred to recover noneconomic damages.  Appellant agreed that the victim's economic damages were covered by the $50,000 paid by his insurance company but claimed that the $50,000 recovery on the victim's policy was "gravy"  and constituted non-economic damages.[2]  Appellant argued that the restitution award should be reduced from $34,999.99 to $18,333.33.  The trial court impliedly found that the victim's economic damages, which included future medical treatment, exceeded $100,000.

*Discussion*

Appellant argues that the trial court erred in not allocating the attorney fees to those fees incurred for recovering economic damages.  We review for abuse of discretion and uphold the restitution award "as long as the determination of economic loss is reasonable . . . ."  (*People v. Giordano* (2007) 42 Cal.4th 644, 665.)  "[A] victim seeking restitution (or someone on his or her behalf) initiates the process by identifying the type of loss ([Pen. Code,] § 1202.4, subd. (f)(3)) he or she has sustained and its

---

[2] At the restitution hearing, defense counsel argued that Attorney Louis "Koory actually recovered $50,000 on behalf of the [victim] . . . from my client's insurance policy.  And that would certainly cover economic damages *and we have no quarrel with that.* [¶]  Mr. Koory then went on to present a claim on the [victim's] under-insured policy, . . . and that was essentially gravy on top of the economic damages, on top of the out-of-pocket expenses."  (Italics added.)

2

monetary value. Where the restitution claimed is attorney fees, this requirement is met when the record contains prima facie evidence of reasonable attorney fees incurred by the victim to recover the economic losses. [Citations.]" (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.) If a portion of the attorney's fees was incurred solely to collect noneconomic damages, the criminal defendant has the "burden to prove his contention by a preponderance of the evidence. [Citation.]" (*In re Imran Q.* (2008) 158 Cal.App.4th 1316, 1322.) Assuming appellant carries his burden, the "total reasonable fees should be reduced accordingly. [Citations.]" (*People v. Millard* (2009) 175 Cal.App.4th 7, 33.)

In *People v. Millard, supra,* 175 Cal.App.4th 7, defendant was convicted of felony driving under the influence causing bodily injury to another. (Veh. Code, § 23153, subd. (a).) The victim retained a personal injury lawyer who settled with defendant's insurance carrier for $1.1 million. (*People v. Millard. supra*. 175 Cal.App.4th at p. 21.) Although the reasonable value of the attorney's services was $20,000 to $40,000, the victim paid her attorney $366,666 based on a contingency fee contract. (*Id.*, at p. 22.) The trial court found the fee was unconscionable because "a huge amount of money [was] recovered with little or no effort on the part of the Attorney . . . ." (*Ibid.*) The court, however, awarded $366,666 restitution on the ground that it had no "right or jurisdiction to interfere with the contingent fee agreement between the victim and his counsel. . . ." (*Ibid.*) The Court of Appeal reversed. A trial court abuses its discretion when it fails to exercise its discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847-848.)

Unlike, *Millard,* the trial court did not find that the contingency fee was unconscionable or that the insurance settlement involved no effort on the part of the victim's attorney. The trial court concluded that the $34,999.99 contingency fee was reasonable and that the victim's economic damages exceeded $100,000." Appellant's drinking and driving directly caused the lost wages, medical bills and property damage covered by the settlement. The legal expense incurred by the victim to recover these damages from appellant's [and victim's insurance carrier[s] was 'proper, necessary, and a

3

logical result of appellant's criminal conduct.' [Citations.]" (*People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406.)

Appellant argues that the victim did not suffer $100,000 economic damages. That is appellant's burden of proof, not the victim's. (*In re Imran Q., supra,* 158 Cal.App.4th at p. 1322; *People v. Pinedo, supra,* 60 Cal.App.4th at p. 1406; *People v. Millard, supra,* 175 Cal.App.4th at pp. 34-35.) Although the past economic damages total $5,085, victim's future economic damages will more than likely exceed $100,000 as evidenced by the probation report, the traffic accident report, photos of the head-on collision, the preliminary hearing transcript, and the declaration of the victim's attorney. Victim suffered a fractured ankle and foot and chronic neck injuries, causing her to miss 10 weeks of work. Victim's attorney, an experienced personal injury lawyer, declared that victim will require years of treatment for epidural shots, physical therapy, possible neck surgery, chiropractic care, and counseling.

The dissent contends that victim's future economic damages are speculative but it is not our function to reweigh the evidence. To hold that a fractured foot and ankle, a chronic neck injury, and totaled car is worth only $5,085 economic damages defies common sense. Appellant objected to the total fee amount ($34,999.99) but produced no evidence on the allocation of attorney fees for economic and non-economic damages, thus waiving the issue. (*In re Imran Q., supra,* 158 Cal.App.4th at p. 1321.) "[I]t would be improper to reduce the attorney fees incurred to obtain economic damages merely because those same attorney fees also led to the recovery of nonrecoverable damages (e.g., pain and suffering damages). . . . [W]hen fees cannot be reasonably divided between the pursuit of economic losses as opposed to noneconomic losses, the victim is entitled to be fully reimbursed for all actual and reasonable attorney fees. [Citations.]" (*People v. Fulton, supra,* 109 Cal.App.4th at p. 885.)

One could argue that the contingency fee contract does not establish the reasonableness of the fees and that the victim must submit attorney time sheets and lodestar calculations before restitution can be ordered. The loadstar method is a fee shifting mechanism used in civil actions that confer a significant benefit to the public.

4

(See e.g., *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318; *Serrano v. Priest* (1977) 20 Cal.3d 25, 46-47.)  It has little to do with victim restitution.  (See *People v. Taylor* (2011) 197 Cal.App.4th 757, 764 [restitution based on attorney fee contingency fee contract]; *People v. Ortiz* (1997) 53 Cal.App.4th 791, 800 [trial court may use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole].)  Our Supreme Court has never mandated "a blanket 'lodestar only' approach" in civil cases and has stated that "every fee-shifting statute must be construed on its own merits . . . ."  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136.)

Section 1202.4, subdivision (f)(3)(H) authorizes restitution for "[a]ctual and reasonable attorney's fees" incurred by the victim in recovering her economic damages.  "Applying the lodestar to attorney fees incurred by crime victim overlooks the fundamental purpose of the statutory and constitutional right to victim restitution, awarding 'full restitution' to the victim absent 'compelling and extraordinary reasons for not doing so. . . .' (§ 1202.4, subd. (f).)  Since a victim will likely have to pay a contingent fee in any personal injury action resulting from the crime, evidence that the victim incurred the contingent fee is prima facie evidence of a loss entitling [her] to compensation."  (*People v. Taylor, supra,* 197 Cal.App.4th at p. 764.)  Where there is no principled way to allocate attorney's fees with respect to the victim's recovery of economic and noneconomic damages, the victim must be fully reimbursed for all actual and reasonable attorney fees.  (*In re Imran Q., supra,* 158 Cal.App.4th at p. 1322.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

I concur:

GILBERT, P. J.


5

PERREN, J., Dissenting:

I respectfully dissent.

The majority rejects a straw argument. Appellant does not "contend[] that the trial court erred in not apportioning the attorney fees to the victim's economic and noneconomic damages." (Maj. op., at p. 1.) Appellant recognizes that this is his burden and that, should he fail to meet it, the law presumes all damage to be economic. Indeed, as the majority notes, appellant conceded his liability for $18,333.33 in fee restitution because he could not prove that the attorney's work negotiating the $50,000 settlement with his insurer was divisible between economic and noneconomic losses.

Appellant's contention is that the victim suffered only $5,085 in economic losses and that a settlement with her own insurer was unnecessary except to recoup noneconomic losses. His argument is logically sound and, in my view, sufficient to meet his burden. To rebut appellant's showing, the victim should have pointed to evidence (supplementing the record if necessary) demonstrating that her economic losses exceeded $50,000 and only would be fully covered by a second insurance settlement.

This is not a Herculean task. If the victim had sought compensation directly from appellant rather than through an insurer, she would be required "to provide an adequate factual basis for the [restitution] claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) Moreover, "a trial court has broad discretion to choose a method for calculating the amount of restitution" and need only "employ a method that is rationally designed to determine the surviving victim's economic loss." (*Id.* at pp. 663-664.)

The victim's statement of loss in the probation report, which improperly included $15 for therapy received the week before the accident, was the only evidence from which to quantify her economic damages. Ninety percent of her reported damages were for lost wages in the immediate aftermath of the collision. The victim did not claim these would recur. To speculate that the victim, having incurred just $490 in medical expenses during the year after the accident, will incur more than $44,930 in future medical expenses is staggering.

6

The majority leaves the impression that the record contains other evidence to support its speculation, such as "the traffic accident report, photos of the head-on collision, the preliminary hearing transcript, and the declaration of the victim's attorney." It does not. The police report and photos merely document that the collision occurred. The remaining evidence describes the victim's injuries qualitatively but provides no basis for quantifying them.

According to the preliminary hearing transcript, the victim "ended up having a fractured ankle and her neck had been bothering her." Her attorney stated in his declaration that she "continues to have residual symptoms in her right foot and ankle which are present on a daily basis" and "still experiences anxiety issues when riding in a vehicle." Compensation for "'pain, suffering . . . , mental suffering, [and] emotional distress'" constitutes noneconomic damages. (*People v. Valenti* (Jan. 14, 2016, B255727) __ Cal.App.4th __ [2016 WL 191991, at p. 22].) The victim's attorney provided few details of the specific future treatment the victim will need and no estimate of its cost. The attorney stated only that the victim "will require chiropractic care and physical therapy to treat her chronic neck injury" and "may reasonably require one or two additional cervical epidural shots in the next one to two years."

I do not assert, as the majority suggests, that the victim's "totaled car" was part of her $5,070 in demonstrated economic damages. (Maj. op., at p. 4.) Four months before reaching the $50,000 settlement with appellant's insurer, the victim stated that the insurer already had "fully covered" her vehicle damage. There is no evidence that this coverage was included in the settlement. Even if it was, the cost of replacing her 10-year-old Mini Cooper was certainly less than $44,930.

Restitution cannot be awarded on a speculative basis. (See *People v. Valenti*, *supra*, [2016 WL 191991, at p. 22] [reversing restitution award where evidence of economic damages was speculative and "filtered through" third persons rather than directly from the victims]; see also Civ. Code, § 1431.2, subd. (b)(1) ["[T]he term 'economic damages' means objectively verifiable monetary losses"].) "[T]he court in this

7

case did not find facts, cite reliable evidence, or even explain how it arrived at the amount of restitution awarded to [the] victim." (*People v. Valenti* [2016 WL 191991, at p. 24].)

It may well be that evidence and not common sense and inference will justify such an award. The present record offers no such showing. Here, however, the majority pays the fee before knowing what it is paying for.[3] The majority's detailing of the victim's personal injury would undoubtedly justify a jury in a civil case awarding the settlement sum, perhaps more. That, however, is not in issue. The economic loss sought includes an unsubstantiated number.

The majority rightly expresses concern for the protection of the victim. Appellant is on probation. Should the victim incur additional expense, she can seek a modification of the order of restitution. (See Pen. Code, § 1203.3, subd. (a) ["The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence"].) I would reverse to permit the trial court to do the math.

NOT TO BE PUBLISHED.


PERREN, J.

---

[3] Ending a sentence with a preposition is something up with which I will not put. (Winston Churchill (attrib.).)

8

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____


Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, William H. Shin and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.